Si-iaucic, C. J.
At the general election held on November 5, 1912, the relator was elected to the office of judge of the circuit court for the sixth judicial circuit for the term of six years to begin on the 9th day of February, 1913. It is admitted that there was at the time clear constitutional and statutory authority for that election. The doubts which justified the governor in withholding the commission of the relator until his right thereto should be determined by this department arise out of the amendments to the constitution of the state whose valid ratification on September 3, 1912, to take effect January 1, 1913, is admitted. By the amendment the circuit court is superseded by the court of appeals, and for the respondent it is contended that as there will be no circuit court in existence for the term to which the relator 'was elected, or any part thereof, the writ should not issue to require the respondent to do a vain thing. For the relator it • is insisted that although the court of appeals has superseded the circuit court, such relation between the two courts is established and maintained by the instrument by which the change was accomplished as to make the commis *371 sion effective to authorize the relator to exercise the functions of a judge of the court of appeals for six years from February 9, 1913.
To support their view counsel for the relator quote at length from the debates in the convention which submitted the proposed amendments for ratification by the electors. But from both the nature of the subject and the adjudications respecting it we receive very impressive warnings against reliance upon that source of information. It is quite familiar that written contracts conclude all previous and contemporaneous stipulations, and that even as to statutes the views as to their meaning entertained by members of the bodies empowered to enact them and to give them full effect are not appropriate sources of information respecting their meanings. United States v. Trans-Missouri Freight Assn., 166 U. S., 318. In Exchange Bank v. Hines, 3 Ohio St., 47, Thurman, J., has pointed out that less consideration is due to the views of individual members of a convention which is not empowered to enact but only to suggest.
Propriety requires us to assume that the one-fourth of the electors of the state by whom the amendments were ratified fully appreciated the gravity of changing the organic law of a great state which had been formulated with great care and that they employed terms which they deemed appropriate to accomplish the changes which they intended to make. To the language which they used and to the purposes which they indicated we must resort to ascertain their intention. The pro *372 visions affecting the question to be determined are contained in Section 6 of Article IV. The material portion of the section is:
“Sec. 6. The state shall be divided into appellate districts of compact territory bounded by county lines, in each of which there shall be a court of appeals consisting of three judges, and until altered by law the circuits in which the circuit courts are now held shall constitute the appellate districts aforesaid. The judges of the circuit courts now residing in their respective districts shall be the judges of the respective courts of appeals in such districts and perform the duties thereof until the expiration of their respective terms of office. Vacancies caused by the expiration of the terms of office of the judges of the courts of appeals shall be filled by the electors of the respective appellate districts in which such vacancies shall arise. Until otherwise provided by law the term of office of such judges shall be six years. Laws may be passed to prescribe the time and mode of such election and to alter the number of districts or the boundaries thereof, but no - such change shall abridge the term of any judge then in office. The court of appeals shall hold at least one term annually in each county in the district and such other terms at a county seat in the district as the judges may determine upon, and the county commissioners of any county in which the court of appeals shall hold sessions shall make proper and convenient provisions for the holding of such court by its judges and officers. Each judge shall be com *373 petent to -exercise judicial powers in any appellate district of the state. The courts of appeals shall continue the work of the respective circuit courts and all pending cases and proceeding's in the circuit court shall proceed to judgment and be determined by the respective courts of appeals, and the supreme court, as now provided by law, and cases brought into said court of appeals after the taking effect hereof shall be subject to the provisions hereof, and the circuit courts shall be merged into, and their work continued by, the courts of appeals. The courts of appeals shall have original jurisdiction in quo ztr.arranto, mandamus, habeas corpus, prohibition and procedendo, and appellate jurisdiction in the trial of chancery cases, and, to review, affirm, modify, or reverse the judgments of the courts of common pleas, superior courts and other courts of record within the district as may be provided by law, and judgments of the courts of appeals shall be final in all cases, except cases involving questions arising under the constitution of the United States or of this state, cases of felony, cases of which it has original jurisdiction, and cases of public or great general interest in which the supreme court may direct any court of appeals to certify its record to that court. No judgment of a court of common pleas, a superior court or other court of record shall be reversed except by the concurrence of all the judges of the court of appeals on the weight of the evidence, and by a majority of such court of appeals upon other questions; and whenever the judges of a court of appeals find that a judgment *374 upon which they have agreed is in conflict with a judgment pronounced upon the same question by any other court of appeals of the state, the judges shall certify the record of the case to the supreme court for review and final determination.”
A comparison of these provisions with the preceding constitutional and statutory provisions relating to the composition of the circuit courts, the selection of the judges, the boundaries of the circuits and districts, and the general character of the jurisdiction conferred, discloses a purpose to retain in our judicial system an intermediate court of errors and appeals sustaining a similar relation to the inferior courts and to the supreme court as did the circuit court, but designated by a different name. It is true that the language employed to confer appellate jurisdiction on the court of appeals differs widely from that previously employed by the statute to confer such jurisdiction upon the circuit court, but whether any substantial change in that jurisdiction was intended will be for determination in cases which may present the question. It is also true that with designated exceptions the judgments of a court of appeals are declared “final,” thus using a word which previously characterized judgments which were subject to review, but in a connection which may now require it to be construed as meaning that they are not subject to review. The comparison seems to justify the statement that no change whatever is effected which required a change in the constitution except in the name of *375 the court and the addition of prohibition to the subjects of its original jurisdiction.
• Counsel for the relator call attention to some of the definite provisions of the section as supporting their view. One of them is: “judges of the circuit courts now residing in their respective districts shall be the judges of the respective courts of appeals in such districts and perform the duties thereof until the expiration of their respective terms of office.” The word “now” in this connection is properly said to refer to the first day of January, 1913, when the section, if ratified, was to take effect. However that may be, and however frequently the title of judge may be applied to persons who do not hold judicial stations, it is evident that the relator could not upon that day, with regard for the technical meaning of words, be said to have been a judge of the circuit court. This was expressly decided in State, ex rel. Savage, v. Hidy, Judge, 61 Ohio St., 549. But all the authorities admonish us that we are construing the language of the people and that we must not deny it an intended meaning because it would be technically incorrect. In view of numerous expressions used in this amendment special heed should be given to this admonition in the present consideration, for we find a number of these are used in obvious disregard of their technical meaning and some in like disregard of strict lexicology. While the provision quoted cannot be said to import, it does suggest that *376 there was in mind the uninterrupted identity of the intermediate court.
Another provision is much more significant with respect to the question before us: “The circuit courts shall be merged into and their work continued by the courts of appeals.” While this form of expression would hardly be anticipated in an instrument of the character of this, it cannot be regarded as the mere equivalent of: “The circuit court shall be succeeded by the court of appeals.” It obviously denotes a more intimate relation between the circuit courts and the courts of appeals than would be denoted by the provision that the latter should succeed the former. It being clear that there was intended no such difference in the constitution or functions of the intermediate courts as would make an election to one court inconsistent with service in the other, there being expressed the practical functional identity of the courts in the provision that judges actually serving in one should serve in the other, and there being in the provision lastly quoted a characterization of the transition which clearly retains a more intimate relation than that of mere succession, we think the language employed, considered with the objects to be attained, properly leads to the conclusion that by virtue of his election the relator will be entitled to exercise the functions of a judge of the court of appeals for six years from February 9, 1913.

Peremptory writ allowed.

Johnson, Donahue, Wanamaker, Newman and Wilkin, JJ., concur.